Eric S. Rossman, ISB #4573
erossman@rossmanlaw.com
Erica S. Phillips, ISB #6009
ephillips@rossmanlaw.com
ROSSMAN LAW GROUP, PLLC
737 N. 7th Street
Boise, Idaho 83702
Telephone: (208) 331-2030
Facsimile: (208) 342-2170

Attorneys for Plaintiff

THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LILA NORMAN, an individual, | CASE NO. 1:17-cv-34 |
| Plaintiff, | |
| | **COMPLAINT AND DEMAND FOR** |
| -vs- | **JURY TRIAL** |
| GREENHURST NURSERY AND GARDEN CENTER, INC.; and JOSE CUEVAS, an individual, | **Filing Fee: $400.00** |
| Defendants. | |

COMES NOW, Lila Norman, the above-named Plaintiff, and for cause of action against the Defendants Greenhurst Nursery and Garden Center, Inc. and Jose Cuevas, hereby COMPLAINS AND ALLEGES as follows:

## PARTIES

1. At all times relevant to the allegations herein, Plaintiff Lila Norman (hereinafter "Norman") was a resident of the County of Ada, State of Idaho.

COMPLAINT AND DEMAND FOR JURY TRIAL - 1

2. At all times relevant herein, upon information and belief, Defendant Greenhurst Nursery and Garden Center, Inc. (hereinafter "Greenhurst") was and is an Idaho company authorized to do business in the State of Idaho.

3. At all times relevant herein, Defendant Jose Cuevas (hereinafter "Cuevas") was and is a resident of the County of Canyon, Idaho. Cuevas also is known as José Cerzano.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1367(a).

5. Venue is appropriate in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3).

## GENERAL ALLEGATIONS

6. Norman began working for Greenhurst in May of 2013.

7. Norman worked as a yard worker and as a sales agent.

8. Norman's performance with Greenhurst has been good.

9. Shortly after Norman started working for Greenhurst, Norman began having problems with a co-worker, Cuevas.

10. Cuevas began asking Norman personal questions, including about who was at her house the previous night, he mentioned how he liked Norman's landscaping or he would mention to Norman that her lawn needed mowed.

11. Norman had never told Cuevas where she lived so this made her very uncomfortable.

12. Cuevas also began hugging and holding Norman and not letting her go when she requested and other unwanted touching.

COMPLAINT AND DEMAND FOR JURY TRIAL - 2

13. In July of 2013, Norman became very concerned about Cuevas' actions and Norman was very uncomfortable at work with him so she went to my supervisor, Samantha Farnsworth and told her everything that had been happening.

14. Ms. Farnsworth suggested that Norman talk to Cuevas about her concerns and let Cuevas know she was not okay with any of his actions.

15. Norman went to Cuevas and told him that she was not comfortable with him in her personal life or with him touching her.

16. Initially, Cuevas refrained from continued inappropriate behavior.

17. A co-worker, Scott Richmond, witnessed inappropriate comments and unwanted touching by Cuevas to Norman and reported it to Ms. Farnsworth.

18. Occasionally Cuevas would approach Norman and act like he was going to give her a hug and then he would stop himself and say something about how he can't touch Norman.

19. In approximately mid-September of 2013, Cuevas began asking Norman personal questions again, including mentioning her home again.

20. Norman reported to Ms. Farnsworth that the harassment was beginning again.

21. Ms. Farnsworth told Norman that she was going to talk with Cuevas.

22. Ms. Farnsworth did not discuss the harassment with Cuevas.

23. On one occasion in September or October of 2013, Cuevas and Norman were unloading boxes from a pallet.

24. When the owner, Mike Blickenstaff, walked away, Cuevas reached down the front of Norman's shirt and grabbed Norman's breast while she was bent over.

25. Norman was in shock and just walked away.

COMPLAINT AND DEMAND FOR JURY TRIAL - 3

26. The next day, Norman went to Ms. Farnsworth and reported to her the incident involving Cuevas on the previous day.

27. Ms. Farnsworth went to the gift store manager and owners' daughter, Erin Ramirez, to report the incident of inappropriate touching of Norman by Cuevas.

28. Ms. Ramirez re-arranged Norman's work schedule so that Norman would be working inside in the store with Ms. Ramirez on Thursday and Norman was given that Saturday off so that Norman would not be working alone with Cuevas outside.

29. On October 7, 2013, Norman arrived to work and there had been no further changes to the schedule and Norman was scheduled to work outside alone with Cuevas.

30. Norman asked if anyone in the office had the personal cell phone number for either of the owners but was told no.

31. One of the employees did have the number and ended up calling the other owner, Marilyn Blickenstaff, and advised her that she was needed at Greenhurst.

32. When Ms. Blickenstaff arrived Norman was instructed that she needed to just stay away from Cuevas and if Norman needed anything, she should call Ms. Blickenstaff.

33. Norman told Ms. Blickenstaff that wasn't good enough.

34. Ms. Blickenstaff replied by telling Norman they can't bring on a third person to follow Norman around and make sure she is okay at all times.

35. Greenhurst employs at least 15 employees.

36. Norman was laid off for the season at the end of October/early November of 2013 and never contacted to come back to work.

37. On November 5, 2014 Norman filed a Charge of Discrimination with the Idaho

**COMPLAINT AND DEMAND FOR JURY TRIAL - 4**

Human Rights Commission alleging gender harassment/discrimination in violation of the Idaho Human Rights Act, Idaho Code § 67-5901 *et seq.*, and Title 7 of the Civil Rights Act of 1964. Plaintiff requested the paperwork be filed concurrently with the U.S. Equal Employment Opportunity Commission.

38. On September 16, 2015 Norman filed a revised Charge of Discrimination with the Idaho Human Rights Commission.

39. On April 1, 2016, the Idaho Human Rights Commission issued its report.

40. On November 2, 2016, the Idaho Human Rights Commission issued its Notice of Right to Sue on Plaintiff's claims.

## COUNT ONE

### *Gender Discrimination in Employment in Violation of Title VII of the Civil Rights Act of 1964, the Gender Discrimination in Employment Act and the Idaho Human Rights Act*

41. Norman hereby realleges the allegations contained in Paragraphs 1 through 40 as set forth above, and incorporates the same herein by reference.

42. The actions of Greenhurst deprived Norman of opportunities and adversely affected Norman's employment because of her gender in violation of the Civil Rights Act, 42 U.S.C. § 2000e, *et. seq.* and the Idaho Human Rights Act, Idaho Code § 67-5901 *et seq.*, which prohibits discrimination/harassment based on gender.

43. As a result of Greenhurst's violation of the Civil Rights Act, 42 U.S.C. § 2000e, *et. seq.*, and the Idaho Human Rights Act, Idaho Code § 67-5901 *et seq.*, Norman is entitled to compensatory damages including, but not limited to, lost wages and lost benefits in an amount to be determined with specificity at trial.

44.  Norman is entitled to recover her attorney fees and costs incurred in pursuing this matter pursuant to 42 U.S.C. § 1988(b), 42 U.S.C. § 2000e-5(k), and Idaho Code §§ 12-120 and 12-121.

45.  Norman hereby reserves this paragraph for the inclusion of a claim for punitive damages pursuant to 42 U.S.C. § 1981a and Idaho Code § 6-1604.

## COUNT TWO

### *Retaliatory Discharge of Employment in Violation of Title VII of the Civil Rights Act of 1964, and the Idaho Human Rights Act*

46.  Norman hereby realleges the allegations contained in Paragraphs 1 through 45 as set forth above, and incorporate the same herein by reference.

47.  Norman reported conduct that she perceived to be gender harassment and discrimination.

48.  In response to Norman's reporting of gender harassment and discrimination, Greenhurst retaliated against Norman, ultimately terminating her employment.

49.  The action of terminating Norman's employment in response to a report of gender harassment and discrimination is a violation of the Civil Rights Act, 42 U.S.C. § 2000e, *et. seq.* and the Idaho Human Rights Act, Idaho Code § 67-5901 *et seq.*, which prohibits retaliation for the reporting of gender discrimination.

50.  As a result of Greenhurst's violation of the Civil Rights Act, 42 U.S.C. § 2000e, *et. seq.*, and the Idaho Human Rights Act, Idaho Code § 67-5901 *et seq.*, Norman is entitled to compensatory damages including, but not limited to, lost wages and lost benefits in an amount to be determined with specificity at trial.

51. Norman is entitled to recover her attorney fees and costs incurred in pursuing this matter pursuant to 42 U.S.C. § 2000e-5(k) and Idaho Code §§ 12-120 and 12-121.

52. Norman hereby reserves this paragraph for the inclusion of a claim for liquidated or punitive damages as permitted by federal and/or state law.

## COUNT THREE

### *Termination in Violation of Idaho Public Policy*

53. Norman hereby realleges the allegation contained in Paragraphs 1 through 52 as forth above, and incorporates the same herein by reference.

54. An employer is liable for wrongful termination where the motivation for the termination contravenes public policy.

55. An important public policy recognized by Idaho State common law and statutes is that an employer may not discharge an employee on the basis of their gender.

56. Greenhurst's termination of Norman's employment in retaliation for reporting sexual harassment constitutes a material breach of the aforementioned recognized and established public policy.

57. As a direct and proximate result of Greenhurst's breach of public policy, Norman has suffered damages in excess of $25,000 to be proven with specificity at trial.

58. Norman is entitled to recover her attorney fees and costs incurred in pursuing this matter pursuant to 42 U.S.C. § 2000e-5(k) and Idaho Code §§ 12-120 and 12-121.

59. Norman hereby reserves this paragraph for the inclusion of a claim for liquidated or punitive damages as permitted by federal and/or state law.

## COUNT FOUR

### *Battery*

60. Norman realleges and incorporates by this reference all the allegations contained in Paragraphs 1 through 59 above as if set out in full.

61. Cuevas' actions in unwanted physical touching of Norman constitutes a battery against Norman.

62. As a direct and proximate result of Cuevas' battery, Norman has suffered special damages in the form of past and future medical expenses, future economic loss and general damages in the form of pain, suffering and emotional distress in an amount in excess of $25,000.00 to be proven at trial.

63. Cuevas' actions, as alleged hereinabove, were willful, reckless and intentional.

64. Norman has been compelled to employ the services of the Rossman Law Group, P.L.L.C. to institute and prosecute this claim. Norman is, therefore, entitled to reasonable attorney fees for the services of said attorneys under Idaho Code §§ 12-120, 12-121 and any other applicable statute or rule.

65. Norman hereby reserves this paragraph for the inclusion of a claim for liquidated or punitive damages as permitted by federal and/or state law.

## COUNT FIVE

### *Negligence*

66. Norman realleges and incorporates by this reference all the allegations contained in Paragraphs 1 through 65 above as if set out in full.

COMPLAINT AND DEMAND FOR JURY TRIAL - 8

67. Cuevas' actions, as alleged hereinabove, were negligent constituting a breach of duties of care owed by Cuevas to Norman to avoid causing foreseeable injuries to her.

68. Cuevas' negligence was the direct and proximate cause of Norman's injuries.

69. As a direct and proximate result of Cuevas' negligence, Norman has suffered special damages in the form of past and future medical expenses, future economic loss and general damages in the form of pain, suffering and emotional distress in an amount in excess of $25,000.00 to be proven at trial.

70. Cuevas' actions, as alleged hereinabove, were willful, reckless and intentional.

71. Norman has been compelled to employ the services of the Rossman Law Group, P.L.L.C. to institute and prosecute this claim. Norman is, therefore, entitled to reasonable attorney fees for the services of said attorneys under Idaho Code §§ 12-120, 12-121 and any other applicable statute or rule.

72. Norman hereby reserves this paragraph for the inclusion of a claim for liquidated or punitive damages as permitted by federal and/or state law.

## COUNT SIX

### *Respondeat Superior Liability*

73. Norman realleges and incorporates by this reference all the allegations contained in Paragraphs 1 through 72 above as if set out in full.

74. Upon information and belief Cuevas was working as an employee for Greenhurst during the time of the aforementioned events.

COMPLAINT AND DEMAND FOR JURY TRIAL - 9

75. Cuevas was acting within the course and scope of his employment at the time that of the gender discrimination/harassment, battery of Norman and negligence at the time of the aforementioned events.

76. As Cuevas' employer at the time of the aforementioned events, which occurred while Cuevas was acting within the course and scope of his employment, Greenhurst is liable for the damages caused to Norman by Cuevas' gender discrimination/harassment, battery and negligence under the theory of *respondeat superior*.

77. As a direct and proximate result of Cuevas' gender discrimination/harassment, battery and negligence, as imputed to Greenhurst, pursuant to the theory of *respondeat superior*, as set forth above and otherwise, Norman has sustained both economic and non-economic losses. Norman has incurred severe mental suffering manifested by physical symptoms including, but not limited to, anger, anxiety, depression, loss of appetite and neurological complications. The amount of these damages to be proven with specificity at trial in an amount in excess of $25,000.00.

78. Cuevas and Greenhurst's actions, as alleged hereinabove, were willful, reckless and intentional.

79. Norman has been compelled to employ the services of the Rossman Law Group, P.L.L.C. to institute and prosecute this claim. Norman is, therefore, entitled to reasonable attorney fees for the services of said attorneys under Idaho Code §§ 12-120, 12-121 and any other applicable statute or rule.

80. Norman hereby reserves this paragraph for the inclusion of a claim for liquidated or punitive damages as permitted by federal and/or state law.

## COUNT SEVEN

### *Negligent Infliction of Emotional Distress*

81. Norman realleges and incorporates by this reference all the allegations contained in Paragraphs 1 through 80 above as if set out in full.

82. Cuevas and Greenhurst's actions, as alleged hereinabove, were negligent and fell below the applicable standards of care owed to Norman by Cuevas and Greenhurst at the times and places alleged hereinabove.

83. As a direct and proximate result of Cuevas and Greenhurst's reckless and/or negligent conduct, as alleged hereinabove, Norman has incurred severe mental suffering manifested by physical symptoms including, but not limited to, anger, anxiety, depression, loss of appetite and neurological complications.

84. As such, Norman is entitled to recover monetary damages from Cuevas and Greenhurst representing fair and reasonable compensation for the emotional distress suffered by Norman as a result of the wrongful conduct alleged hereinabove in an amount in excess of $25,000.00 to be proven at trial.

85. Cuevas and Greenhurst's actions, as alleged hereinabove, were willful, reckless and intentional.

86. Norman has been compelled to employ the services of the Rossman Law Group, P.L.L.C. to institute and prosecute this claim. Norman is, therefore, entitled to reasonable attorney fees for the services of said attorneys under Idaho Code §§ 12-120, 12-121 and any other applicable statute or rule.

87. Norman hereby reserves this paragraph for the inclusion of a claim for liquidated or punitive damages as permitted by federal and/or state law.

## COUNT EIGHT

### *Intentional Infliction of Emotional Distress*

88. Norman realleges and incorporates by this reference all the allegations contained in Paragraphs 1 through 87 above as if set out in full.

89. Cuevas and Greenhurst's actions, as alleged hereinabove were intentional and/or reckless and fell below the applicable standards of care owed to Norman by Cuevas and Greenhurst at the times and places in question.

90. Cuevas and Greenhurst's actions, as alleged hereinabove, were extreme and outrageous constituting an extreme deviation from reasonable standards of conduct and fell below the applicable standards of care owed to Norman by Cuevas and Greenhurst at the times and places alleged hereinabove.

91. As a direct and proximate cause of Cuevas and Greenhurst's actions, as alleged hereinabove, Norman has suffered severe emotional distress.

92. As such, Norman is entitled to recover monetary damages from Cuevas and Greenhurst representing fair and reasonable compensation for the emotional distress suffered by Norman as a result of the wrongful conduct alleged hereinabove in an amount in excess of $25,000.00 to be proven at trial.

93. Norman has been compelled to employ the services of the Rossman Law Group, P.L.L.C. to institute and prosecute this claim. Norman is, therefore, entitled to reasonable

attorney fees for the services of said attorneys under Idaho Code §§ 12-120, 12-121 and any other applicable statute or rule.

94. Norman hereby reserves this paragraph for the inclusion of a claim for liquidated or punitive damages as permitted by federal and/or state law.

## PRAYER FOR RELIEF

WHEREFORE, Norman prays for Judgment, Order and Decree of this Court as follows:

1. For judgment of the court awarding Norman damages in excess of $25,000, incurred as a result of Greenhurst's violation of Title VII of the Civil Rights Act of 1964; the Gender Discrimination in Employment Act; the Idaho Human Rights Act; and for retaliatory discharge of Norman's employment for reporting violations of the Gender Discrimination in Employment Act, and the Idaho Human Rights Act.

2. For money damages for Norman from Cuevas and Greenhurst under the theories of battery, negligence, *respondeat superior*, and negligent and intentional infliction of emotional distress in a sum to be determined at trial in excess of $25,000.00, and representing Norman's special damages for past and future medical or psychological care which are reasonable in the premises but, at a minimum, meet the jurisdictional threshold of this Court;

3. For general damages for pain and suffering, emotional distress, mental anguish loss of enjoyment of life in amounts that may be proven at trial which are reasonable in the premises but, at a minimum, meet the jurisdictional threshold of this Court.

4. For leave to amend this complaint to add additional causes of action and/or claims for damages, including punitive damages, based upon the outcome of discovery and pretrial proceedings in this matter;

COMPLAINT AND DEMAND FOR JURY TRIAL - 13

5.  For prejudgment interest on all damages recovered at the rate set forth within Idaho Code § 28-22-104.

6.  For Norman's reasonable attorney fees and costs incurred in prosecuting this action, pursuant to 42 U.S.C. § 2000e-5(k) and Idaho Code §§ 12-120 and 12-121.

7.  For such other and further relief as court deems just and necessary.

## DEMAND FOR JURY TRIAL

Norman demands a trial by jury of no less than twelve (12) persons on all issues so triable pursuant to Federal Rule of Civil Procedure 38(b).

DATED this 24th day of January, 2017.

ROSSMAN LAW GROUP, PLLC

Eric S. Rossman
Attorneys for Plaintiff

\\CORPORATE\Shared Folders\RLG\Work\N\Norman, Lila\Pleadings\Complaint.doc